**UNITED STATES of America,**
**Plaintiff,**

v.

**Jose DENIS, Defendant.**

**No. 99–714–CR–MORENO.**

United States District Court,
S.D. Florida.

Dec. 3, 2002.

Frederick Steven Robbins, Robbins Tunkey Ross Amsel Raben, Miami, FL, Reuben Camper Cahn, Fed. Public Defender's Office, Miami, FL, Paul Domenic Petruzzi, Miami, FL, for Jose Denis.

Michael Harvey Blacker, Miami, FL, Neil M. Schuster, Miami Beach, FL, for Pedro Castillo.

Barry Steven Greff, Weston, FL, for Evelio Guzman.

William Donald Matthewman, Seiden Alder & Matthewman, Boca Raton, FL, for Willie Martinez.

Lawrence E. Besser, Samek & Besser, Miami, FL, Steven Hunter Kassner, Miami, FL, for Jorge Ginart.

Jay L. Levine, Levine & Finger, Miami, FL, for Jorge Miranda.

Charene Elizabeth Sreenan, AUSA, Washington, DC, for U.S.

### *ORDER DENYING MOTIONS TO DISMISS AND TO STRIKE*

MORENO, District Judge.

Defendant Jose Denis, charged in Count IV with using and carrying a firearm during a drug trafficking crime resulting in death,[1] has received notice that the United States will seek a sentence of death if Defendant is convicted. Defendant moved to preclude the government from seeking the death penalty by filing a motion challenging the constitutionality of the Federal Death Penalty Act ("FDPA") and to strike the Government's notice of its intent to seek death for numerous reasons, including an allegation that the FDPA violates the rule of *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). For the reasons that follow, the Court denies the motions.

The FDPA, 18 U.S.C. §§ 3591–3598, was signed into law on September 13, 1994. The Supreme Court has upheld the FDPA on its face. *Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). In addition, the 11th Circuit has affirmed death sentences pursuant to the federal scheme. *United States v. Battle*, 163 F.3d 1 (11th Cir.1998); *United States v. Chandler*, 996 F.2d 1073 (11th Cir.1993).

Based upon that binding precedent it is clear that the FDPA provides sufficient safeguards to prevent the arbitrary imposition of the death penalty. The only argument that merits discussion is whether intervening Supreme Court law renders those precedents inapplicable. This Court rejects the invitation to reach a conclusion different from prior Eleventh Circuit cases. It would obviously be more appropriate for the Eleventh Circuit to determine if its precedents are still binding law. Nevertheless, a discussion of some of the defendant's arguments is warranted.

### *UNITED STATES v. QUINONES*

Defendant argues first that the FDPA is unconstitutional for the reasons stated in the recent case of *United States v. Quinones*, 205 F.Supp.2d 256 (S.D.N.Y.2002). On July 1, 2002, in *Quinones*, Judge Jed Rakoff granted a defendant's motion to strike all death penalty aspects from the case, on the ground that the FDPA is unconstitutional. The court held that it is "fully foreseeable that in enforcing the death penalty, a meaningful number of innocent people will be executed who otherwise would eventually be able to prove their innocence," and concluded that the "implementation of the FDPA not only deprives innocent people of a significant opportunity to prove their innocence, and thereby violates procedural due process, but also creates an undue risk of executing innocent people, and thereby violates substantive due process." *Id.* at 256. The court premised its decision on evidence that a growing number of innocent people are being sentenced to death by *state* courts, with convincing proof of their innocence emerging from new DNA technology, long after their convictions. *Id.; see also United States v. Quinones*, 196

---

**1.** Richard Valdez, the victim, was bound with tape, beaten, burned and shot once in the head while in his hotel room. Other co-defendants participated in the binding and tying up of the victim, but Defendant Denis is the sole alleged shooter.

F.Supp.2d 416, 418 (S.D.N.Y.2002) (discussing tentative decision and reasons for granting motion to strike). Therefore, the court held that the Constitution "must be interpreted in light of evolving standards of fairness and ordered liberty." *Id.* at 259.

Judge Rakoff relied on *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), where the Supreme Court accepted the constitutionality of administering capital punishment, but contemplated the possibility that a death penalty sentence would allow the states to execute a defendant for a crime that he did not commit. The issue in *Herrera* was whether executing an innocent person is inconsistent with the Constitution. Ultimately, the *Herrera* Court concluded that the likelihood that innocent people may mistakenly be executed does not automatically compel a court to find a violation of due process under the Constitution.

■ On its face, *Quinones* appears to be inconsistent with *Herrera,* but this Court need not reach the issue of whether the likelihood of executing an innocent petitioner automatically denies his due process. The reason this Court need not reach that important issue is because the use of statistics that apply to *state* death penalty cases *cannot* support a conclusion of that possibility in *federal* cases. This use of statistics is inappropriate, not only because they can be easily manipulated, but because they relate to cases from states with different capital sentencing schemes. The federal statistics, on the other hand, show that of the thirty one defendants facing execution under the FDPA, only two, Oklahoma City bomber Timothy McVeigh and drug kingpin and murderer Juan Garza, have been executed. Five of the remaining twenty nine sentences were reversed, but *none* of these defendants was found to be innocent.[2] *See United States v. Quinones,* 196 F.Supp.2d 416 (S.D.N.Y.2002).

The *Quinones* court found this sample of federal cases to be too small and the convictions too recent from which to draw any conclusions. *Id.* at 417. That alone should prevent a court ruling based on statistics. Yet the *Quinones* court determined that there was no logical reason to suppose that the practices and procedures in federal cases would be materially more successful in preventing mistaken convictions than the alleged deficient state procedures.

Judge Rakoff's reasons for declaring the death penalty unconstitutional included newly-developing scientific techniques and a study conducted on Modern American capital appeals. However, due to changes in technology, DNA testing is now routinely available prior to trial, so in the future this technology will prevent the problems facing those sentenced to death in the past Therefore, this Court agrees with the holding of *United States v. Church,* 217 F.Supp.2d 700, 702 (W.D.Va.2002), that the "federal experience with death penalty cases does not support an argument that the federal court system is likely to convict the truly innocent."

■ Furthermore, reliance on anecdotal information reported in the media does not provide a basis for a court to rule on any legal issue, let alone to strike as unconstitutional a law properly passed by Congress. This a federal death penalty case, thus statistics or anecdotes on state convictions are of no significance. This case, as any federal death case, will be presided by a judge appointed by the President, con-

---

2. The government elected not to reseek the death penalty in two cases, and one defendant had his death sentence commuted to life imprisonment.

firmed by the Senate, with a life term as provided by the United States Constitution. Therefore, the defendant will receive the adequate procedural due process, as have apparently the other thirty one people[3] sentenced to death in federal court.

## SEPARATION OF POWERS

 Finally, the Court notes that the propriety of capital punishment is an issue for the legislature, not the Courts. Congress may not delegate its legislative power to another branch, but it may seek assistance from another branch so long as Congress legislates "an intelligible principle" to which the person or body authorized to exercise the delegated authority is directed to conform. *Mistretta v. United States*, 488 U.S. 361, 372, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The FDPA sufficiently circumscribes its delegated authority with intelligible principles to avoid violating the non-delegation doctrine. 18 U.S.C. §§ 3591–3598. Accordingly, judges must maintain judicial restraint on issues that are legislative in nature, so as not to violate the separation of powers mandated under the Constitution. The Supreme Court has made clear that legislatures are the legitimate branches to deal with policy issues concerning capital punishment. Making determinations about whether a punishment is "cruel and unusual" under the evolving standards of decency embraced by the 8th Amendment is usually a policy decision, and the Court has empha-

sized that legislation is the "clearest and most reliable objective evidence of contemporary values." *Penry v. Lynaugh*, 492 U.S. 302, 331, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).[4] To declare the death penalty unconstitutional on the grounds raised here would be judicial activism with no Constitutional basis. This court rejects that invitation to legislate from the bench, irrespective of the important moral issues raised by capital punishment.

## RING v. ARIZONA

Defendant also filed a separate motion to bar the government from seeking the death penalty because the FDPA allegedly violates the rule of *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). *Ring* reversed *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), which previously upheld Arizona's capital sentencing scheme. Since that time, the Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that any sentencing factor that raises the sentence beyond the maximum under the statute must be submitted to the jury and proven beyond a reasonable doubt. In light of *Apprendi*, the Court in *Ring* found Arizona's capital sentencing law unconstitutional because of the jury's lack of participation in the imposition of the death sentence.

 Defendant argues that the FDPA violates his constitutional right to trial by

---

**3.** This Court also notes the fact that five of these thirty one people have had their death sentences reversed only further evinces the point that the federal system has the adequate procedural safeguards in place to prevent innocent people from being put to death.

**4.** It is true that in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), the Supreme Court held that executions of mentally retarded criminals are "cruel and unusual punishments," prohibited by the 8th

Amendment. The Court concluded that in construing and applying the 8th Amendment in the light of "evolving standards of decency," such punishment is excessive and that the Constitution "places a substantive restriction on the State's power to take the life" of a mentally retarded offender. *Id.*, at 2252. However there is no claim that the defendant here is mentally retarded, thus *Atkins* is not applicable.

jury. In particular, Defendant points to factors included as part of the sentencing phase rather than the elements of the offense. Those factors however, as applied in this case, must nevertheless be found by the jury beyond a reasonable doubt. Therefore, the FDPA does not run afoul of either *Apprendi* or *Ring*. *Ring* dealt solely with Arizona's death penalty law, where the judge makes the determination of death. Such is not the case under the FDPA.

Furthermore, through the superseding indictment, it is clear that the government presented the aggravating factors to the Grand Jury that returned the indictment. Thus the government has complied with the most strict interpretation of *Apprendi*. Even if the aggravating factors were to constitute an element of the offense, they were submitted to the Grand Jury and will be decided by the Petit Jury at trial beyond a reasonable doubt based on evidence presented in conformity with the strict rules of evidence.[5] Therefore the FDPA as applied to this case does not run afoul of either *Ring* or *Apprendi*.

### IMPROPER AGGRAVATING FACTORS

■ Defendant seeks to strike all or part of the Government's Notice of Intent to seek the Death Penalty because of the insufficiency of the statutory aggravating factors listed in the indictment. These aggravating circumstances include: (1) heinous, cruel or depraved manner of committing the offense; (2) commission of the offense for pecuniary gain; (3) participation in an additional, uncharged attempted murder to obstruct justice; (4) future dangerousness of the Defendant; and (5) victim impact evidence concerning the offense on the victim's family. The court finds arguments on the insufficiency of aggravating factors as premature and denies the motion to strike with leave to reargue at the end of the presentation of the evidence.

■ Defendant Denis also claims that "future dangerousness" is an improper aggravating factor because it includes other aggravating circumstances within this same category. The Defendant objects to double counting the aggravating facts of future dangerousness as a separate factor as well as part of other aggravating factors such as lack of remorse and the commission of prior bad acts. The Defendant's argument is that such factors will be counted twice and that the jury will conduct an arithmetic analysis, adding all of these factors and weighing them improperly by counting them twice resulting in a death sentence.

The Court rejects this argument because it will properly instruct the jury, consistently with defense counsel's proposed instructions, not to conduct an "arithmetic counting" analysis in their findings on aggravating factors. Thus, there will be no "double counting" by the jury because it will be properly instructed

---

**5.** In *United States v. Fell* 217 F.Supp.2d 469 (D.Vt.2002), Judge Williams Sessions held that allowing a jury to hear hearsay evidence under the relaxed evidentiary rules applied at federal sentencing hearings violate the Constitution. Other courts have disagreed with *Fell.* (*See United States v. Waldon,* No. 3:00–CR–436–J25TJC, M.D. Fla., Judge Adams; *United States v. Lentz,* 225 F.Supp.2d 672 (E.D.Va.2002)); *See also Church,* 217 F.Supp.2d at 703 (W.D.Va.2002)(finding the Act constitutional); *United States v. O'Driscoll,* No. 4:CR–01–277, 2002 WL 32063818, *2 (M.D.Pa. Aug. 22, 2002)(finding the Act constitutional). In this case the government has agreed not to introduce hearsay and the court will apply the strict rules of evidence. Thus, the claims under the Sixth Amendment right of confrontation are moot.

on how to weigh mitigating and aggravating circumstances.

### RACIAL DISCRIMINATION

Defendant has also moved to dismiss the prosecutor's request to seek the death penalty because it is sought by the government in an allegedly racially discriminating manner. Alternatively, the defendant seeks discovery to support its discriminatory challenge.

The recent decision of *United States v. Bass* 536 U.S. 862, 122 S.Ct. 2389, 153 L.Ed.2d 769 (2002), summarily reversed the Sixth Circuit Court of Appeals, and held that the defendant was not entitled to a discovery order requiring the government to provide information relating to its decisions to seek the death penalty. Under *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), a defendant seeking discovery on a claim of selective prosecution must show some evidence of discriminatory intent and discriminatory effect. The evidence must show that similarly situated defendants of a different race were not prosecuted. The national statistics, submitted in *Bass,* indicating only race statutes were found to be inadequate to demonstrate discriminatory effect.

■ Likewise, Defendant in this case has provided insufficient information that similarly situated persons were treated differently. Thus, he is not entitled to discovery. Based upon *Armstrong* and *Bass* the defense motion to strike the prosecutor's request for death or alternatively to obtain discovery to support his claim of racial discrimination is denied.

### CONCLUSION

Wherefore the Court, finding no constitutional infirmity in the Government seeking the death penalty in the case, denies all motions to dismiss and strike.