**UNITED STATES of America**

v.

**Gary Lee SAMPSON**

No. CR.01–10384–MLW.

United States District Court,
D. Massachusetts.

Feb. 18, 2003.

John A. Wortmann, Jr., George W. Vien, Emily R. Schulman, Frank M. Gaziano, United States Attorney's Office, John Joseph Moakley Federal, Boston, MA, for U.S. Attorneys.

David A. Ruhnke, Ruhnke & Barrett, Montclair, NJ, Robert L. Sheketoff, Attorney At Law, Boston, MA, for Gary Lee Sampson (1), Defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

This memorandum is based on the transcript of the decision rendered orally on January 3, 2003, in which the court denied the defendant's Motion to Withdraw Previously–Entered Pleas of Not Guilty and to Plead Guilty to Both Counts of the Indictment. This memorandum adds some citations, clarifies some language, expands some discussion, and deletes the discussion of a potential Ex Post Facto Clause issue that is not now presented.

\* \* \* \* \* \*

## I. PROCEDURAL HISTORY

Defendant Gary Sampson was indicted on October 24, 2001. He was charged with two counts of violating 18 U.S.C. § 2119(3). Section 2119 makes it a crime to take a motor vehicle by force or violence with intent to cause death or serious bodily harm. Section 2119(3) provides that, if death results, the defendant may be sentenced to death himself. The defendant pled not guilty to both charges on November 5, 2001.

On June 5, 2002, the grand jury returned the First Superseding Indictment, which corrected some errors in the original indictment, but did not substantively change the charges against Sampson.

Like the original indictment, the First Superseding Indictment alleged each of the elements of the § 2119(3) offense. It did not, however, allege the facts that would have to be proven for the defendant to be eligible for the imposition of the death penalty pursuant to the Federal Death Penalty Act, 18 U.S.C. §§ 3591 *et seq.* On June 14, 2002, the defendant pled not guilty to both counts of the First Superseding Indictment.

On June 24, 2002, the Supreme Court decided *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Addressing an Arizona law and overruling *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the Court held in *Ring* that a jury, not a judge, must decide if aggravating factors required to impose the death penalty have been proven beyond a reasonable doubt. *Ring*, 122 S.Ct. at 2443.

On August 5, 2002, Sampson filed a motion to withdraw his not guilty pleas, to plead guilty to the First Superseding Indictment, and to be sentenced to life in prison without possibility of parole (the "Motion"). The Motion was premised on the contention that the First Superseding Indictment did not include all of the allegations necessary to permit the imposition of the death penalty after *Ring*.

On August 8, 2002, the grand jury returned the Second Superseding Indictment. The Second Superseding Indictment includes a Notice of Special Findings, which alleges the facts concerning the defendant's state of mind and certain statutory aggravating factors which must be proven beyond a reasonable doubt to a jury for the defendant to be eligible for the death penalty. *See* 18 U.S.C. §§ 3591(a)(2), 3592(c), 3593(c)-(e).

On August 8, 2002, the court ordered the defendant to file a memorandum in support of the Motion. On September 13, 2002, the defendant filed that memorandum. The defendant also then agreed to defer arraignment on the Second Superseding Indictment until the Motion was decided.

The defendant filed a supplemental memorandum on September 25, 2002. The government filed its opposition to the Motion on October 4, 2002. On October 16, 2002, the defendant filed a reply.

The court did not act immediately on the Motion because the Department of Justice had not filed a notice of intent to seek the death penalty, as is required by 18 U.S.C. § 3593(a) to subject a defendant to that sanction. If the Department of Justice decided not to file such a notice, the Motion would have been moot. Sampson could have pled guilty to the First or the Second Superseding Indictments and been sentenced to a maximum of life in prison.

However, the Department of Justice did file a notice of intent to seek the death penalty on November 19, 2002. It reiterates the allegations concerning the defendant's state of mind and, with one exception, the aggravating factors included in the Second Superseding Indictment. It also describes certain non-statutory factors on which the government intends to rely in seeking the death penalty if it obtains a conviction, proves that the defendant acted with one of the required states of mind, and proves that at least one statutory aggravating factor exists. *See* 18 U.S.C. §§ 3591(a)(2), 3592(c), 3593(c)-(e).

On November 22, 2002, the government filed a supplemental opposition to the Motion. On December 6, 2002, the court held a conference and scheduled oral argument for January 3, 2003. On December 18, 2002, the defendant filed a second supplemental memorandum. On January 3, 2003, the court held a hearing on the Motion.

For the reasons described below, the Motion is being denied.

## II. ANALYSIS

Sampson argues primarily that a series of recent Supreme Court decisions, culminating in *Ring*, render the Federal Death Penalty Act unconstitutional because the statute requires that the Department of Justice rather than a grand jury decide if it is permissible and appropriate to subject a defendant to a prosecution that could result in a death sentence. The court must resolve this issue now. If Sampson's contention is correct, he is entitled to plead guilty to the First Superseding Indictment and all other issues will be moot.

The defendant also initially argued that the Federal Death Penalty Act is unconstitutional because 18 U.S.C. § 3593(c) permits evidence to be admitted in the death penalty phase of the case that would not be admissible under the Federal Rules of Evidence and, therefore, violates his Fifth and Sixth Amendment rights. This argument proved persuasive to the district court in *United States v. Fell*, 217 F.Supp.2d 469 (D.Vt.2002). However, at the January 3, 2003 hearing, after the court expressed its tentative view that it was premature to address this question in this case, counsel for Sampson withdrew this ground for the Motion without prejudice to raising the issue in the future.

### A. *Ring Does Not Render The Federal Death Penalty Act Unconstitutional*

The defendant has the burden of proving that the Federal Death Penalty Act is unconstitutional. *See, e.g., Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001). The Federal Death Penalty Act was enacted in 1994. At that time, *Walton v. Arizona, supra,* represented the law concerning the procedures required for the constitutionally lawful imposition of the death penalty. *Walton* was decided by the Supreme Court in 1990. In *Walton,* the Supreme Court held that " 'the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury.' " *Id.* at 648, 110 S.Ct. 3047 (quoting *Hildwin v. Florida,* 490 U.S. 638, 640–41, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (per curiam)). This meant that it was constitutionally permissible for a judge, rather than a jury, to make the factual *findings necessary to raise the maximum* possible sentence from life in prison to death.

The Federal Death Penalty Act, however, provides defendants more procedural protection than *Walton* required. The Federal Death Penalty Act provides that, in a federal case, the jury must find beyond a reasonable doubt that the defendant acted with at least one form of statutorily defined intent and that at least one statutory aggravating factor exists before it can decide that the death penalty is justified. *See* 18 U.S.C. §§ 3591(a)(2), 3592(c), 3593(c)-(e).

However, the Federal Death Penalty Act does not define a role for the grand jury in determining what state of mind or aggravating factors may be considered at trial. Rather, § 3593(a) provides that the Department of Justice may determine whether to seek the death penalty. If the government decides to do so, the statute also requires that the attorney for the government give notice that it will seek the death penalty and set forth the aggravating factors it proposes to prove to obtain the imposition of the ultimate sanction. *See* 18 U.S.C. § 3593(a). This procedure was constitutional under *Walton* because the Supreme Court had in effect decided that the facts that raised the

maximum sentence from a term of imprisonment to death were sentencing factors rather than elements of the offense, which the Fifth Amendment requires be charged by the grand jury in an indictment. *See Walton*, 497 U.S. at 647–49, 110 S.Ct. 3047; *Jones v. United States*, 526 U.S. 227, 251, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Ring*, 122 S.Ct. at 2439.

In 1999, however, the Supreme Court decided *Jones*. In *Jones*, the Court held that the carjacking statute involved in this case, 18 U.S.C. § 2119, creates three separate offenses. *See Jones*, 526 U.S. at 251–52, 119 S.Ct. 1215. Section 2119(3) requires causing serious bodily injury or death to raise the maximum possible punishment to death. Therefore, those facts were deemed elements of a greater offense that had to be found by a jury beyond a reasonable doubt rather than by a judge. *Id.*

The Supreme Court expressly explained the basis for its decision, stating that:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

*Id.* at 243 n. 6, 119 S.Ct. 1215. The Court also made clear in that footnote that it was not restricting the ability of legislators to define the elements of a criminal offense. *Id.* Rather, it said that "[t]he constitutional safeguards that figure in our analysis concern not the identity of elements defining criminal liability but only the required *procedures* for finding facts that determine the maximum possible punishment." *Id.* (emphasis added).

Nevertheless, in *Jones*, the majority attempted to distinguish certain capital sentencing factors, including those upheld in *Walton*. *Id.* at 251, 119 S.Ct. 1215; *accord Ring* at 2439. Therefore, *Jones* did not overrule *Walton*.

In 2000, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). At issue was "the adequacy of New Jersey's procedure" for determining whether a crime was committed to intimidate someone based on race or some other factor that potentially enhanced a sentence. *Apprendi*, 530 U.S. at 475, 120 S.Ct. 2348. In *Apprendi*, the existence of such a motive would have raised the maximum permissible punishment from ten to twenty years in prison. *Id.* at 468–69, 120 S.Ct. 2348. New Jersey law permitted a judge to decide by a preponderance of the evidence whether an offense was a hate crime and, therefore, subjected the defendant to a higher maximum sentence. *Id.* at 471–73, 120 S.Ct. 2348. The Supreme Court, however, held that if a particular fact results in an "increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense." *Id.* at 494 n. 19, 120 S.Ct. 2348.

Thus, the Supreme Court invalidated the New Jersey sentencing scheme as it applied to hate crimes because the Fifth and Sixth Amendments "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Id.* at 477, 120 S.Ct. 2348 (quoting *United States v. Gaudin*, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)) (brackets in original).

In *Ring*, the Supreme Court recently reconsidered and overruled *Walton*. *See*

*Ring*, 122 S.Ct. at 2443. It characterized Arizona's enumerated aggravating factors as the functional equivalents of elements of a greater offense. *Id.* Thus, it held that those factors would have to be found by a jury beyond a reasonable doubt for the maximum permissible sentence to be raised to death. *Id.* at 2439, 2443.

On the day it decided *Ring*, the Supreme Court also decided *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). In *Harris*, a plurality of the Court stated that *"McMillan [v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) ] and *Apprendi* mean that those facts setting the outer limits of a sentence ... are elements of the crime for the purposes of the constitutional analysis." *Id.* at 2419.

Consistent with the statement in *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215, that the Supreme Court was addressing only the required procedures for finding facts, *Jones*, Apprendi, and *Ring* have been regularly held, in habeas cases, to announce a rule of criminal procedure rather than a new rule of substantive law. *See United States v. Brown*, 305 F.3d 304, 308–09 (5th Cir.2002); *Cannon v. Mullin*, 297 F.3d 989, 994 (10th Cir.2002); *United States ex rel. Perez v. Warden, FMC Rochester*, 286 F.3d 1059, 1063 (8th Cir.2002); *United States v. Sanchez–Cervantes*, 282 F.3d 664, 668 (9th Cir.2002); *McCoy v. United States*, 266 F.3d 1245, 1257 n. 16 (11th Cir.2001). In addition, in rejecting a constitutional challenge to 21 U.S.C. § 841, which provides for enhanced penalties in drug cases based on drug type and quantity, the Fourth Circuit held that the *Apprendi* rule governs only the process by which the elements of the crime must be determined. *See United States v. McAllister*, 272 F.3d 228, 232 (4th Cir.2001).

■ This court agrees that *Jones*, Apprendi, and *Ring* concern criminal proce-

dure and not the definition of conduct which is criminal, which is a legislative function. *See Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215. Essentially, after this trilogy of cases, legislatures retain the sole power to determine what must be proven to subject a defendant to the death penalty. *Id.* As the Supreme Court wrote in *Jones*, "[t]he constitutional guarantees that give rise to our concern in no way restrict the ability of legislatures to identify the conduct they wish to characterize as criminal or to define the facts whose proof is essential to the establishment of criminal liability." *Id.* However, the courts are the final arbiter concerning which of those facts must be treated as elements of the offense that must be charged in an indictment and proven to a jury beyond a reasonable doubt for a particular punishment to be imposed. *See Ring*, 122 S.Ct. at 2441. As the Supreme Court noted in *Ring*, "*Apprendi* repeatedly instructs ... that the characterization [by the legislature] of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative." *Id.*

■ In view of the foregoing, the court concludes that, in light of *Ring*, the facts concerning a defendant's state of mind and aggravating factors that the Federal Death Penalty Act requires be proven for a defendant to be eligible for the death penalty must be treated procedurally as elements of the offense alleged—in this case, a violation of § 2119(3). Therefore, they " ' ... must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Ring*, 122 S.Ct. at 2439 (quoting *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215).

The government does not dispute this. Rather, the government states in its opposition to the Motion that, "[a]fter *Ring*, it seems that the culpability and statutory aggravating factors that allow for the im-

position of the death penalty should appear in the indictment." Govt.'s Opp. at 8–9. That is the reason that the government obtained the Second Superseding Indictment, which includes a notice of special findings concerning the defendant's state of mind and certain statutory aggravating factors.

As described earlier, the Federal Death Penalty Act expressly requires that the facts necessary to make a defendant eligible for the death penalty be found by a jury beyond a reasonable doubt, as is constitutionally required after *Ring*. *See* 18 U.S.C. §§ 3593(c)-(e). The Federal Death Penalty Act does not, however, require that a grand jury find probable cause to believe that those facts exist and include them in an indictment. Therefore, the defendant asserts that the Federal Death Penalty Act is unconstitutional. The defendant also argues that "the act may not be saved by a judicial 'construction' that creates a new criminal offense whose elements and intertwined procedures have neither been considered, nor enacted into law, by Congress." Def.'s Memo. at 4. The defendant's contentions, however, are not correct.

█ Read together, the Federal Death Penalty Act and *Ring* provide that: (1) the Department of Justice must find that the circumstances of an alleged offense justify the imposition of the death penalty; but (2) the Department of Justice finding is not alone sufficient to subject a defendant to a possible death sentence.

Because the intent and aggravating factors requirements of the Federal Death Penalty Act must now be treated procedurally as elements of an offense for which the death penalty is authorized, a grand jury must agree with the Department of Justice that it is permissible and appropriate that a defendant be exposed to the death penalty and give him notice in the indictment of the alleged grounds for imposing it. *See Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (discussing role of grand jury); *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (same); *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 1786–87, 152 L.Ed.2d 860 (2002) (same).

█ The Supreme Court has often instructed that "courts should construe statutes to avoid decision as to their constitutionality." *United States v. Monsanto*, 491 U.S. 600, 611, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989); *see also INS v. St. Cyr*, 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Salinas v. United States*, 522 U.S. 52, 59–60, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). However, this "canon of constitutional avoidance has no application in the absence of statutory ambiguity." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 494, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001); *see also Salinas*, 522 U.S. at 59–60, 118 S.Ct. 469; *Monsanto*, 491 U.S. at 611, 109 S.Ct. 2657. In this case it is clear that, in enacting the Federal Death Penalty Act in 1994, Congress did not provide that the grand jury would play a role in deciding whether a defendant would be eligible for a death sentence if convicted of the crime it charged. Thus, it is not permissible for the court to invoke the canon of constitutional avoidance to interpret the statute as providing a role for the grand jury.

However, the Federal Death Penalty Act does not manifest an intent to prohibit the grand jury from performing its historic, constitutional function if *Walton* were ever reversed and the facts making a defendant eligible for the death penalty were

deemed, for procedural purposes, to be elements of an offense rather than sentencing factors.

"The avoidance canon rests upon [the Supreme Court's] 'respect for Congress, which [the Court] assume[s] legislates in light of constitutional limitations.'" *Harris*, 122 S.Ct. at 2413 (quoting *Rust v. Sullivan*, 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991)). It should, therefore, be assumed that Congress knew in 1994 that the Constitution requires that all elements of an offense must be alleged in an indictment. This proposition was well established long before 1994. The Supreme Court discussed this requirement in 1962 in *Russell.* *See* 369 U.S. at 763, 82 S.Ct. 1038. In 1974, in *Hamling*, it reiterated the holding of *Russell* and cited cases in support of it dating back to 1882. *See* 418 U.S. at 117–18, 94 S.Ct. 2887.

As a corollary of the principle that it should be assumed that Congress legislates in light of constitutional limitations, it is logical and reasonable to assume also that Congress legislates with knowledge that the Supreme Court at times reverses its previous interpretation of the Constitution. Virtually everyone knows that, in 1896, the Supreme Court held that separate but equal facilities for blacks and whites were constitutionally permissible and, in 1954, held that they were not. *Compare Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896) *with Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

Most lawyers remember from their first year in law school that, in 1938, the Supreme Court reversed *Swift v. Tyson* and, in *Erie Railroad Co. v. Tompkins*, held that, in diversity cases, federal courts must apply state substantive law. *Compare Swift v. Tyson*, 41 U.S. 1, 16 Pet. 1, 10 L.Ed. 865(1842) *with Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.

1188 (1938). In explaining the *Erie* decision, Justice Louis D. Brandeis wrote: "If only a question of statutory construction were involved, we should not be prepared to abandon a doctrine so widely applied throughout nearly a century. But the unconstitutionality of the course pursued has now been made clear, and compels us to do so." *Erie*, 304 U.S. at 77–78, 58 S.Ct. 817.

As Edward Levi, then a professor of law, wrote in 1948 in his widely read *An Introduction to Legal Reasoning:*

> In addition to the power to hold legislative acts invalid, a written Constitution confers another and perhaps as great a power. It is the power to disregard prior cases. "The ultimate touchstone of constitutionality is the Constitution itself and not what we have said about it," Justice Frankfurter has written. The problem of *stare decisis* where a Constitution is involved is therefore an entirely different matter from that in case law or legislation. This is often overlooked when the court is condemned for its change of mind. A change of mind from time to time is inevitable when there is a written Constitution. There can be no authoritative interpretation of the Constitution. The Constitution in its general provisions embodies the conflicting ideals of the community. Who is to say what these ideals mean in any definite way? Certainly not the framers, for they did their work when the words were put down. The words are ambiguous. Nor can it be the Court, for the Court cannot bind itself in this manner; an appeal can always be made back to the Constitution..... [T]here is the influence of constitution worship. This influence gives great freedom to a court. It can always abandon what has been said in order to go back to the written document itself.

Edward H. Levi, *An Introduction to Legal Reasoning* 58–59 (1948) (quoting *Graves v. New York*, 306 U.S. 466, 491, 59 S.Ct. 595, 83 L.Ed. 927 (1939) (Frankfurter, J., concurring)).

This principle has particular pertinence with regard to the death penalty. In 1991, the Supreme Court in *Payne v. Tennessee*, 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) overruled its prior decisions in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) concerning the admissibility of victim impact evidence in a death penalty proceeding. In doing so, the Court explained why the reasons for the principles underlying the doctrine of *stare decisis* were weakest in constitutional cases involving procedural and evidentiary rules. *See Payne*, 501 U.S. at 828, 111 S.Ct. 2597. It is reasonable to assume that Congress knew this in 1994.

It is also reasonable to assume that in 1994 Congress knew the Supreme Court had, in 1972, held in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) that state death penalty statutes long regarded as lawful were unconstitutional because they permitted the arbitrary and unguided imposition of the death sentence and, therefore, had to be rewritten and reenacted by legislatures. As a result, many states were, for a period of time, unable to impose the death penalty in cases in which they had intended that it be available.

In view of the foregoing, it is reasonable to assume that Congress understood that the Supreme Court might reverse *Walton* and decide in the future that the facts which must be proven to impose the death penalty must be treated as elements of an offense. Therefore, Congress had reason to enact a Federal Death Penalty Statute that would remain constitutional if this occurred. While the court does not find that Congress actually considered the question of the grand jury's role while drafting, debating, and enacting the Federal Death Penalty Act, it did have a reason to recognize that the Supreme Court's interpretation of the Constitution as applied to the death penalty might change and to enact a law that would be flexible enough to withstand any such change. Thus, Congress had reason to create a statute that would not only be constitutional when enacted, but would also remain constitutional in light of possible future developments.

■ The question then becomes whether the Federal Death Penalty Act is written in a way that survives the evolution of the constitutional law that *Ring* represents. The court finds that it is.

The Federal Death Penalty Act anticipated some of the constitutional requirements imposed by *Ring*. As described earlier, it provides that the facts which make a defendant eligible for the death penalty must be proven to a jury beyond a reasonable doubt.[1] *See* 18 U.S.C. §§ 3593(c)-(e).

---

1. The statute does not address whether the jury must be persuaded beyond a reasonable doubt that aggravating factors sufficiently outweigh mitigating factors to justify the imposition of the death penalty. *See* 18 U.S.C. 3593(e). This issue has not been presented by the Motion that the court is now addressing and is not being decided. However, the court notes that in *United States v. Jackson*, 390 U.S. 570, 580, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Supreme Court stated that it is permissible to fill a minor gap in a statute by extrapolating from its general design details that have been inadvertently omitted. The court expects that this is an issue it may have to decide in the future. The court notes that in *United States v. Gilbert*, Cr. No. 98–30004–MAP, which is to date the only case in which a Massachusetts jury has been required to consider imposing the death penalty pursuant

The fact that *Ring* requires decisions by the grand jury in addition to the Department of Justice before a defendant is subject to the possible imposition of the death penalty is consistent with the usual practice in criminal cases. Federal Rule of Criminal Procedure 7(c)(1) requires that an attorney for the government sign an indictment. As the Supreme Court has explained, the grand jury serves as a check on the potential abuse of power by the government. *See Cotton*, 122 S.Ct. at 1786–87. The signing requirement of Federal Rule of Criminal Procedure 7(c)(1) provides a means by which the Department of Justice serves as a check against the possible abuse of power by a grand jury.

As indicated earlier, there is nothing in the Federal Death Penalty Act that expresses Congressional intent to prohibit the grand jury from performing its traditional function under the Fifth Amendment following *Ring*. Rather, the statute is silent with regard to the grand jury's role. As explained earlier, *Jones, Apprendi,* and *Ring* address issues of criminal procedure. The Federal Death Penalty Act does not conflict with or contradict the grand jury process that is now prescribed by these cases. A similar silence and lack of conflict have been relied upon by the First Circuit and other Courts of Appeals to reject claims that provisions of drug statutes which raise maximum penalties based on drug weight are unconstitutional because they do not provide for proving the triggering facts to a jury beyond a reasonable doubt. *See United States v. Collazo–Aponte,* 281 F.3d 320, 324–25 (1st Cir. 2002); *accord United States v. Candelario,* 240 F.3d 1300, 1311 n. 16 (11th Cir.2001); *United States v. Slaughter,* 238 F.3d 580, 582 (5th Cir.2000); *United States v. Cerno-*

*byl,* 255 F.3d 1215, 1218–19 (10th Cir. 2001); *McAllister,* 272 F.3d at 232; *United States v. Kelly,* 272 F.3d 622, 623–24 (3d Cir.2001); *United States v. Martinez,* 253 F.3d 251, 256 n. 6 (6th Cir.2001); *United States v. Woods,* 270 F.3d 728, 729–30 (8th Cir.2001).

Recognizing a role for the grand jury in deciding whether a defendant shall be subject to the death penalty does not require a rewriting of the Federal Death Penalty Act. The statutory roles of the Department of Justice, the judge, and the jury are not altered. Contrary to Sampson's contention, the notice by the Department of Justice is not rendered redundant if the grand jury's indictment includes allegations concerning the defendant's state of mind and aggravating factors that the Federal Death Penalty Act requires be proven for the defendant to be eligible for the death sentence. The Department of Justice's notice may omit at least one of the statutory aggravating factors and also may describe additional non-statutory aggravating factors that the government will seek to prove to justify a sentence of death. In the instant case, the notice serves both of these functions by omitting one of the statutory aggravating factors alleged in the Second Superseding Indictment and by describing certain non-statutory aggravating factors that the government will seek to prove. *See* Notice of Intent to Seek the Death Penalty (Docket No. 103) at 3–5, 7–9 (identifying non-statutory aggravating factors). *Compare id.* at 3, 6–7 *with* Second Superseding Indictment at 4–6 (omitting in the Notice a statutory aggravating factor alleged in the Second Superseding Indictment).

Therefore, contrary to defendant's contention, this case is distinguishable from *United States v. Jackson, supra,* and

---

to the Federal Death Penalty Act, Judge Michael Ponsor instructed that the government

had to prove beyond a reasonable doubt that the death penalty was justified.

*Blount v. Rizzi,* 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971). In *Jackson,* the statute at issue authorized only a jury to return a verdict of death. *See Jackson,* 390 U.S. at 572, 88 S.Ct. 1209. The Supreme Court found that this imposed an impermissible burden on the constitutional right to a jury trial because there would be no jury if a defendant pled guilty or was tried by a judge. *Id.* at 572, 582–83, 88 S.Ct. 1209. Therefore, the statute placed pressure on a defendant to plead guilty or to waive his right to a jury trial in order to avert the death penalty or, alternatively, to place his life at risk by exercising his constitutional right to a trial by a jury. *Id.*

The government argued, however, that the judge had the power to convene a special jury for the limited purpose of addressing the death penalty. *See id.* The Supreme Court rejected this construction of the statute at issue, in part because the power to impanel such a jury had not been recognized in the federal system when the statute was enacted. *Id.* at 578, 88 S.Ct. 1209. The Supreme Court stated, however, that:

> If the power to impanel such a jury had been recognized elsewhere in the federal system when Congress enacted the Federal Kidnaping Act, perhaps Congress' total silence on the subject could be viewed as a tacit incorporation of this sentencing practice into the new law. But the background against which Congress legislated was barren of any precedent for the sort of sentencing procedure we are told Congress impliedly authorized.

*Id.*

In contrast, as described earlier, the fact that the Fifth Amendment requires that a grand jury charge elements of an offense was clearly established in 1994 when the Federal Death Penalty Act was enacted.

*See Russell,* 369 U.S. at 763, 82 S.Ct. 1038; *Hamling,* 418 U.S. at 117, 94 S.Ct. 2887. It is reasonable to assume that the fact that the statute does not attempt to prohibit the grand jury from performing its traditional function reflects Congress' tacit understanding that the grand jury could and would do so in a death penalty case if *Walton* were ever reversed. In finding probable cause to believe that facts which make the defendant eligible for the death penalty exist and including them in the Second Superseding Indictment, the grand jury has not made impermissible special findings. Rather, it has performed its traditional duty under the Fifth Amendment to allege all elements of the offense that it has charged.

The statute in *Jackson* was also invalidated because the interpretation advocated by the government would not merely have required the court to "fill a minor gap," but instead would have compelled the Court to "create from whole cloth a complex and completely novel procedure." *Id.* at 580, 88 S.Ct. 1209. In contrast, the Federal Death Penalty Act, the Federal Rules of Criminal Procedure, and the common law governing grand jury practice give Sampson "the guidance that defendants ordinarily find in a body of procedural and evidentiary rules spelled out in advance of trial," that the Supreme Court found lacking in *Jackson. Id.*

*Blount, supra,* is also distinguishable from the instant case. *Blount* involved a statute that permitted the Postmaster General to decide if a mailing is obscene and, if so, to return it to the sender. *Id.* at 411–14, 91 S.Ct. 423. If there was a complaint about such a decision, the statute provided for an administrative appeal of the Postmaster General's decision. *Id.* Subsequent to the enactment of the statute, the Supreme Court held that, in order to be constitutional, a scheme of adminis-

trative censorship must: (1) require the censor to initiate judicial review promptly and prove the material is unprotected expression; (2) require a prompt judicial decision on the merits; and (3) limit any restraint pending a judicial decision to the shortest time "compatible with sound judicial resolution." *Id.* at 417, 91 S.Ct. 423.

The statute at issue in *Blount* was found to be unconstitutional because it did not require that the Postmaster General seek a prompt judicial determination or require a prompt decision by the court. *Id.* at 418–19, 91 S.Ct. 423. The Supreme Court rejected the government's argument that it could avoid the constitutional question by construing the statute to deny the administrative order any effect if the distributor sought judicial review. *Id.* at 419, 91 S.Ct. 423. The court explained that this construction failed to satisfy the requirement that the government initiate the review and that the court decide the matter promptly. *Id.* Thus, it held that, "it is for Congress, not this Court, to rewrite the statute." *Id.*

In contrast, *Ring* does not require that any provision of the Federal Death Penalty Act be rewritten. As described earlier, it only requires that the grand jury perform its traditional function concerning facts that are now deemed to be elements, or the functional equivalent of elements, of offenses for which Congress has decided the death penalty can be imposed.

In view of the foregoing, this court agrees with each of the other courts that have addressed this issue in reported decisions and found that *Ring* does not render the Federal Death Penalty Act unconstitutional. *See United States v. Johnson*, 239 F.Supp.2d 924, 935–46 (N.D.Iowa 2003); *United States v. Denis*, 246 F.Supp.2d 1250, 1254 (S.D.Fla.2002); *United States v. Fell*, 217 F.Supp.2d 469, 478–84 (D.Vt. 2002); *United States v. Regan*, 221 F.Supp.2d 672, 679–81 (E.D.Va.2002); *United States v. Lentz*, 225 F.Supp.2d 672, 677–82 (E.D.Va.2002); *United States v. Church*, 218 F.Supp.2d 813, 815 (W.D.Va. 2002).

B. *18 U.S.C. § 3593(c) May Not Render The Federal Death Penalty Act Unconstitutional, But This Issue Is Not Ripe For Resolution*

■ As indicated earlier, Sampson has withdrawn his request that the court now declare the Federal Death Penalty Act unconstitutional because 18 U.S.C. § 3593(c) authorizes the admission at sentencing of information that would not be admissible under the Federal Rules of Evidence, thus violating defendants' Fifth and Sixth Amendment rights. However, it may be helpful to work that the parties will be doing in the future for the court to explain its tentative thoughts on this issue.

Sampson relies on the analysis declaring the Federal Death Penalty Act unconstitutional in *Fell*, 217 F.Supp.2d at 485–90. Other decisions, including *Regan*, 221 F.Supp.2d at 681–83, have reached a contrary conclusion on the same issue.

■ Sampson's claim that § 3593(c) renders the Federal Death Penalty Act unconstitutional would not now be ripe for resolution in this case. Generally, a court should not decide constitutional issues unnecessarily. This is a fundamental axiom of judicial restraint. *See, e.g., Three Affiliated Tribes v. Wold Eng'g, P.C.*, 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984). In addition, except in First Amendment cases, the issue of whether a statute is unconstitutional must be decided as applied in a particular case. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797–

98, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). As the First Circuit has stated, "[d]eciding constitutional questions in the abstract is a recipe for making bad law." *United States v. Hilton*, 167 F.3d 61, 71 (1st Cir.1999), *overruled on other grounds by Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

In *Fell*, the court focused on a statement the government proposed to introduce that was allegedly made by a deceased codefendant. *See Fell*, 217 F.Supp.2d at 485. The court evidently believed that it would be obligated to admit the statement under § 3593(c), but would exclude it if the Federal Rules of Evidence applied.

In the instant case, Sampson has not pled guilty or been convicted. It is uncertain whether his trial will involve a penalty phase. In addition, and significantly, the court has not been told what evidence the government proposes to offer in any penalty phase. The court cannot now determine whether any such evidence might be admissible under § 3593(c), but not under the Federal Rules of Evidence. Thus, the issue raised and now withdrawn by Sampson might be moot in this case.

If the issue is presented, it is possible that § 3593(c) will prove to be more favorable to the defendant than the Federal Rules of Evidence. Section 3593(c) provides that at the penalty phase of the trial, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." This balancing test is more favorable to the defendant than the test established by Federal Rule of Evidence 403, which requires that to exclude otherwise admissible evidence a court find that its probative value is *substantially* outweighed by such dangers. *See* Fed R. Evid. 403; *Regan*, 221 F.Supp.2d at 682.

Moreover, the Federal Rules of Evidence are not coextensive with the requirements of due process. They are subject to the requirements of due process, but they may provide a defendant more protection than due process requires in a particular case. *See United States v. Brainer*, 691 F.2d 691, 695 n. 7 (4th Cir.1982) (quoting *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943)). Prior to *Ring*, the Supreme Court held that, in a death penalty case, "it [is] desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia*, 428 U.S. 153, 204, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Supreme Court previously and more generally stated that "[t]he due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure." *Williams v. New York*, 337 U.S. 241, 251, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

*Ring*'s holding that the facts that make a defendant eligible for the death penalty must be treated as elements of the offense may place these previous pronouncements in doubt. The present case is not, however, now in a posture where any such doubts can be properly resolved. As trial approaches, the court intends to encourage disclosure of information that the parties propose to introduce in the possible penalty phase of the trial and order the filing of motions in limine concerning such information. The § 3593(c) issue that Sampson has noted may then be ripe for resolution on the merits.

## III. ORDER

It is hereby ORDERED that:

1. The defendant's Motion to Withdraw Previously–Entered Pleas of Not Guilty and to Plead Guilty to Both Counts of the Indictment is DENIED with prejudice.

2. The defendant's Motion to Declare the Federal Death Penalty Act of 1994 Unconstitutional in accord with *United States v. Fell*, 217 F.Supp.2d 469 (D.Vt. 2002) because of the evidentiary standard set forth in 18 U.S.C. § 3593(c) is WITHDRAWN.

## ORDER

Defendant Gary Lee Sampson has filed a motion requesting that this court reconsider and reverse its January 3, 2003 oral decision that the Federal Death Penalty Act is not unconstitutional as a result of the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Sampson relies upon the Supreme Court's January 14, 2003 decision in *Sattazahn v. Pennsylvania*, —— U.S. ——, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). The government opposes Sampson's motion.

The court has considered *Sattazahn* and finds that it does not affect the analysis explained orally by the court on January 3, 2003, and amplified in its written February 18, 2003 Memorandum and Order. Therefore, Sampson's request for reconsideration (Docket No. 125) is hereby DENIED.