**UNITED STATES of America, Plaintiff,**

v.

**Aaron HAYNES, Defendant.**

**No. CR. 01–20247–D.**

United States District Court, W.D. Tennessee, Western Division.

May 5, 2003.

Jacob E. Erwin, Wagerman Law Firm, Howard L. Wagerman, Esq., Wagerman Law Firm, Robert L. Hutton, Esq., Glankler, Brown, PLLC, William D. Massey, Esq., Massey & McClusky, Arthur E. Quinn, Esq., the Bogatin Law Firm, Paula Skahan, Esq., the Skahan Law Firm, Memphis, TN, for defendant.

Thomas L. Parker, Esq., Tony R. Arvin, Esq., U.S. Attorney's Office, Memphis, TN, for U.S.

**MEMORANDUM OPINION DENYING DEFENDANT'S MOTIONS TO DECLARE THE FEDERAL DEATH PENALTY ACT UNCONSTITUTIONAL AND TO STRIKE THE SUPERCEDING INDICTMENT, SPECIAL FINDINGS, AND NOTICE OF INTENT TO SEEK THE DEATH PENALTY**

DONALD, District Judge.

This matter is before the Court on Defendant Aaron S. Haynes' motions to declare the Federal Death Penalty Act unconstitutional (Dkt.# 305), to strike the superceding indictment and special findings (Dkt.# 308), to strike the notice of intent to seek the death penalty and the special findings (Dkt.# 309), and to preclude the government from seeking the death penalty (Dkt.# 310). Defendant argues that the Supreme Court's recent decision in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) mandates that the mens rea and aggravating factors articulated in the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.* (West 2000) ("FDPA") be plead in an indictment and proven to a jury beyond a reasonable doubt. Defendant further alleges that the FDPA is irreconcilable with *Ring* because the FDPA treats these factors as sentencing factors and, in doing so, creates unconstitutional results. Specifically, Defendant claims that the FDPA is unconstitutional because it does not authorize the mens rea or aggravating factors to be plead in an indictment and because it expressly authorizes the use of evidence which would be inadmissible at trial when proving the existence of an aggravating factor. Finally, Defendant avers that the Supreme Court's holding in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) precludes this Court from "curing" these un-

constitutional results through judicial reconstruction of the FDPA.

For the following reasons, the Court finds that recent Supreme Court case law requires that the mens rea and aggravating factors be plead in the indictment, decided by a jury, and proven beyond a reasonable doubt using evidence whose admissibility satisfies constitutional muster. Additionally, the Court further finds that the FDPA, which did not anticipate such treatment of mens rea and aggravating factors, nevertheless is reconcilable with the requirements of the Indictment and Due Process Clauses of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment. Accordingly, the Court denies Defendant's motions.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 9, 2001, the Grand Jury returned an indictment against Defendant alleging five counts: 1) bank robbery by force or violence, in violation of 18 U.S.C. § 2113(a); 2) death as a result of bank robbery, in violation of 18 U.S.C. § 2113(e); 3) possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(b); 4) causing death while using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(j); and 5) unlawful transport of firearms, 18 U.S.C. § 922(g).

On June 24, 2002, the Supreme Court decided *Ring.* On July 18, 2002, in response to the *Ring* decision, the Grand Jury sitting in the Western District of Tennessee returned a Superceding Indict-ment against Defendant. Counts Two and Four of the Superceding Indictment charged capital offenses. The Superceding Indictment contained a "Notice of Special Findings" alleging that Defendant possessed all four mens rea factors described in 18 U.S.C. § 3591(a)(2) and had committed four of the sixteen aggravating factors set forth in 18 U.S.C. § 3592(c).[1] On September 19, 2002, the United States filed a "Notice of Intent to Seek the Death Penalty" against Defendant, setting forth two mens rea factors,[2] the aforementioned four statutory aggravating factors, and three additional non-statutory aggravating factors[3] that the United States intends to rely on in seeking the death penalty during the penalty phase of this trial. *See* Notice Of Intent To Seek The Death Penalty at 2–3 (Dkt.# 271). On October 18, 2002, Defendant filed the motions presently before this Court. *See* Def.'s Mot. To Declare Federal Death Penalty Unconstitutional and to Strike Special Findings From Superceding Indictment (Dkt.# 305) (hereinafter "Def.'s FDPA Mot."); Def.'s Mot. to Strike Superceding Indictment and Special Findings (Dkt.# 308) ("Def.'s Mot. to Strike I"); Def.'s Mot. to Strike Notice of Intent to Seek Death Penalty and Special Findings Alleged in Superceding Indictment (Dkt.# 309) ("Def.'s Mot. to Strike II").

## II. ANALYSIS

Defendant bases his constitutional claims on the Court finding that 1) the FDPA's mens rea and aggravating factors are not mere sentencing factors but are

---

1. The four aggravating factors alleged are grave risk of death to additional persons; pecuniary gain; substantial planning and premeditation; and multiple killings or attempted killings. 18 U.S.C. § 3592(c)(5),(8),(9), & (16).

2. These two factors alleged are intentional killing, pursuant to 18 U.S.C. § 3591(a)(2)(A), and intentional acts of violence with reckless disregard for human life, pursuant to 18 U.S.C. § 3591(a)(2)(D).

3. These three factors alleged are victim impact evidence, other violent criminal acts, and low rehabilitative potential.

instead "elements" which must be charged by a grand jury, tried before a jury, and proven beyond a reasonable doubt; 2) the FDPA does not allow for these factors to be charged by a grand jury or proven to a jury beyond a reasonable doubt using evidence which comports with the Fifth and Sixth Amendments; and 3) constitutional deficiencies in the FDPA cannot be addressed through judicial reconstruction of the statute.

## A. Essential Elements Versus Sentencing Factors

### 1. *Recent Supreme Court Decisions Defining Essential Elements*

In *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Supreme Court addressed whether the federal carjacking statute, 18 U.S.C. § 2119,[4] "defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict." *Jones*, 526 U.S. at 229, 119 S.Ct. 1215. Although acknowledging that the statute was susceptible of either construction, the Court held that § 2119 established three separate offenses, each of which must be found by a jury beyond a reasonable doubt, because to hold otherwise would lead to "grave and doubtful constitutional questions" about the statute's constitutionality. *Id.* at 239, 251–52, 119 S.Ct. 1215. The Court explained that "[u]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215.

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the defendant was convicted of, *inter alia*, second-degree possession of a firearm carrying a maximum ten-year sentence under New Jersey law. *Apprendi*, 530 U.S. at 469–70, 120 S.Ct. 2348. The sentencing judge then found, by a preponderance of the evidence, that Apprendi's offense was motivated by sufficient racial animus to trigger New Jersey's "hate crime enhancement," which doubled Apprendi's maximum allowable sentence. The judge sentenced Apprendi to twelve years in prison, two years more than Apprendi could have received but for the sentence enhancement. Upon review, the Supreme Court held that if the finding of a particular fact results in an "increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense." *Id.* at 494 n. 19, 120 S.Ct. 2348. The Court then held that the New Jersey statute was unconstitutional because it violated his constitutional right to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Id.* at 477, 120 S.Ct. 2348 (quotation and citation omitted).

The Court also clarified that courts assessing whether or not certain facts are essential elements or only sentencing factors need not defer to the nomenclature used by the legislature. "If a State makes

---

4. The carjacking statute provided, at the time of the criminal conduct at issue, that a person possessing a firearm who "takes a motor vehicle ... from the person or presence of another by force and violence or by intimidation ... shall-(1) be ... imprisoned not more than 15 years ..., (2) if serious bodily injury ... results, be ... imprisoned not more than 25 years ..., and (3) if death results, be ... imprisoned for any number of years up to life ...." 18 U.S.C. § 2119 (1994 ed. And Supp. V).

an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact-no matter how the State labels it-must be found by a jury beyond a reasonable doubt." *Id.* at 482–83, 120 S.Ct. 2348. The Court opined:

> [New Jersey] threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race.... Merely using the label 'sentence enhancement' to describe the [second act] surely does not provide a principled basis for treating [the two acts] differently.

*Id.* at 476, 120 S.Ct. 2348. Thus, regardless of the label employed by or the intent of the legislature, the Court concluded that the essential element versus sentencing factor determination turns on whether the factors make the defendant eligible for a punishment exceeding the maximum otherwise available based on the jury verdict.

In *Ring v. Arizona*, the Court was faced with the question of whether *Apprendi* required the overruling of *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), which had upheld the constitutionality of Arizona's capital sentencing scheme requiring that a judge, not a jury, issue factual findings regarding the existence of any aggravating factors. The Court first found that Arizona's aggravating factors were the functional equivalent of elements of a greater offense. *Ring,* 122 S.Ct. at 2433. The Court then stated that "[c]apital defendants, no less than non-capital defendants ... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 2433. As a result, the Court held that Arizona's sentencing scheme was unconstitutional because it deprived defendants of the right to have these quasi-element aggravating factors found by a jury beyond a reasonable doubt. *Id.* at 2439, 2443.

This distinction between essential elements and sentencing factors was reinforced in *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), a case decided the same day as *Ring.* In *Harris,* the Court considered whether "brandishing" a firearm constituted an element of Harris' underlying offense or whether it was a sentencing factor. The Court began by noting that this distinction is critical because "constitutional guarantees attach to" facts that are essential elements but do not attach to facts that are sentencing factors. *Harris,* 122 S.Ct. at 2410. Specifically, facts must be alleged in the indictment, tried before a jury, and proven beyond a reasonable doubt if they are essential elements, but need not afford the same indictment, jury trial, and proof constitutional safeguards if the facts are sentencing factors. *Id.* The Court also affirmed that, while legislatures have the ability to define certain facts as elements or sentencing factors, the Constitution "imposes some limitations as well. For if it did not, legislatures could evade the indictment, jury, and proof requirements by labeling almost every relevant fact a sentencing factor." *Id.; see also id.* at 2414 ("Congress may not manipulate the definition of a crime in a way that relieves the Government of its constitutional obligations to charge each element in the indictment, submit each element to the jury, and prove each element beyond a reasonable doubt.").

Based on the structure of the prohibition within the statute as well as the lack of any historical evidence treating "brandishing" as an element of an offense, the Court determined that Congress intended "brandishing" to be a sentencing factor. *Id.* at 2411–14. The Court then found that this treatment of brandishing was not Constitutionally deficient because a judicial finding of brandishing during sentencing did not increase the defendant's sentence

beyond the maximum authorized by the jury's verdict. As a result, the indictment, jury trial, and proof requirements for essential elements articulated in *Jones*, *Apprendi*, and *Ring* were not at issue. *Id.* at 2419 (only "those facts setting the outer limits of a sentence ... are elements of the crime for the purposes of the constitutional analysis.").

### 2. *The FDPA*

The FDPA's procedures apply to "any [federal] offense for which a sentence of death is provided." 18 U.S.C. § 3591(a)(2). If the government intends to seek the death penalty for a defendant, the government must notify the defendant of this intent "a reasonable time before trial or before acceptance by the court of a plea of guilty." § 3593(a). This notice must set forth all aggravating factors that the government intends to prove as justifying a sentence of death. § 3593(a)(2); *see also United States v. Fell*, 217 F.Supp.2d 469, 477 (D.Vt.2002).

The FDPA instructs that a jury[5] must make three distinct determinations at a "separate sentencing hearing" should the defendant be found guilty at trial or enter a guilty plea regarding any offense specified in § 3591(a) or (b). § 3593(b); *see also Fell*, 217 F.Supp.2d at 477; *United States v. Llera Plaza*, 179 F.Supp.2d 444, 447 (E.D.Pa.2001). First, the jury must unanimously find beyond a reasonable doubt that a defendant acted with one of four actionable mens rea factors. § 3591(a)(2)(A)-(D); *see also Plaza*, 179 F.Supp.2d at 448.[6] If the jury does not find the existence of one of these four

mental states, the death penalty may not be imposed. *Plaza*, 179 F.Supp.2d at 448.

If one of these mental culpability factors is found, the jury then considers "whether the government has proven beyond a reasonable doubt the existence of at least one statutory aggravating factor." *Fell*, 217 F.Supp.2d at 477 (citing § 3593(c), (d)). In a homicide case, the government must prove at least one of the sixteen statutory aggravating factors listed in § 3592(c)(1)-(16). If the jury determines that none of the statutory aggravating factors exists, then the court cannot impose the death penalty. § 3593(d); *Plaza*, 179 F.Supp.2d at 448.

If the jury determines the existence of both the mental state and the aggravating factor "eligibility" requirements, then the jury moves on to the "selection" phase, wherein the jury considers whether all the aggravating factors[7] found to exist outweigh all mitigating factors so as to justify a death sentence. § 3593(e). The prosecution must prove the existence of any aggravating factors beyond a reasonable doubt, and the jury's findings must be unanimous. § 3593(c), (d). The defendant must prove the existence of any mitigating factors by a preponderance of the evidence, but a mitigating factor may be found by just one member of the jury. *Id.* The jury's ultimate recommendation of whether the aggravating factors outweigh the mitigating factors so as to warrant the death penalty must be reached by a unanimous decision. § 3593(e). Each member of a jury returning a finding that the death penalty shall be imposed must also certify

---

**5.** Title 18, Section 3593(b)(1)-(2) of the United States Code sets forth the criteria for determining whether the trial jury or a newly empaneled jury will be used for the sentencing phase. A jury determination may also be waived by a defendant, with the approval of the United States, pursuant to § 3593(b)(3).

**6.** These mens rea factors apply to any offense providing for a death sentence other than offenses described in 18 U.S.C. §§ 794, 408(c)(1), or 2381. § 3591(a)(2).

**7.** This includes non-statutory aggravating factors, so long as notice is given to the defendant regarding these factors. § 3592(c).

that "race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision." § 3593(f).

The FDPA also specifies the admissibility of evidence during the sentencing hearing. "At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592." § 3593(c).[8] Moreover, the FDPA states that "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id.* The statute also provides both the government and the defendant an opportunity "to rebut any information received at the hearing" and "to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death." *Id.; see also Fell,* 217 F.Supp.2d at 478. The government initiates the sentencing hearing, followed by the defendant's reply, with the government given the final rebuttal opportunity. *Id.* Additionally, "no presentence report shall be prepared" in furtherance of this hearing. *Id.* The jury, upon consideration of the information received during the hearing, "shall return special findings identifying any aggravating factor or factors ... found to exist and any other aggravating factor [mentioned in the No-

tice of Special Findings] found to exist." § 3593(d).

### 3. *Analysis of the FDPA in Light of Ring and its Predecessors*

■ The Court finds that the mens rea factors set forth in § 3591(a)(2) and the aggravating factors defined in § 3592(c) that make a defendant eligible for an increase in the maximum punishment from life imprisonment to death must be viewed as "elements" of the offense triggering Fifth and Sixth Amendment protections as described in *Jones, Apprendi, Ring,* and *Harris. See Ring,* 122 S.Ct. at 2440, 2443. Indeed, every post-*Ring* decision addressing the FDPA has rejected the contention that mens rea and aggravating factors are mere sentencing factors which need only be found by a judge based on a preponderance of the evidence. *See United States v. Sampson,* 245 F.Supp.2d 327, 332 (D.Mass. 2003) ("the court concludes that, in light of *Ring,* the facts concerning a defendant's state of mind and aggravating factors that the Federal Death Penalty Act requires be proven for a defendant to be eligible for the death penalty must be treated procedurally as elements of the offense alleged"); *United States v. Matthews,* 246 F.Supp.2d 137 (N.D.N.Y.2002) (stating that *Ring* requires that "statutory aggravating factors 'must ... be alleged in the indictment and found by a jury'") (quoting *United States v. Quinones,* 313 F.3d 49, 53 n. 1 (2d Cir.2002)); *United States v. Denis,* 246 F.Supp.2d 1250, 1254–55 (S.D.Fla. 2002) (finding that aggravating factors "must nevertheless be found by the jury beyond a reasonable doubt"); *Fell,* 217

---

8. Although this language regarding admissible evidence does not specifically mention information pertinent to the mens rea determination, § 3593(c) applies to the entire sentencing hearing, during which the mens rea determination is to be made. § 3591(a)(2). Additionally, use of the word "including" in

§ 3593(c) further suggests that the mens rea information is included within the ambit of § 3593(c). Accordingly, the Court finds that the admissibility language of § 3593(c) applies to all mens rea, aggravating, and mitigating factors.

F.Supp.2d at 483 ("The FDPA's statutory aggravating factors and mental culpability factors expose Fell to a punishment (the death penalty) greater than that otherwise legally prescribed (life imprisonment).... In that respect the factors are indistinguishable from the aggravating circumstances found to be 'the functional equivalent of an element of a greater offense' in *Ring*.") (citations omitted); *United States v. Regan*, 221 F.Supp.2d 672, 679 (E.D.Va. 2002) (stating that *Jones, Apprendi*, and *Ring* "require additional procedural protections in the determination of the existence of facts that may increase punishment"); *United States v. Lentz*, 225 F.Supp.2d 672, 680 (E.D.Va.2002) (same); *cf. United States v. Johnson*, 239 F.Supp.2d 924, 937 (N.D.Iowa 2003) (finding that § 848 [a similarly-worded death penalty statute] aggravating factors "are 'functional equivalents of elements' of the offense, in the sense explained in *Ring* and *Apprendi*.") (citations omitted).

Despite this unanimity in rejecting a finding that the FDPA's mens rea and aggravating factors constitute sentencing factors, a few courts have attempted to distinguish the FDPA from *Jones, Apprendi*, and *Ring* by arguing that these mens rea and aggravating factors should not be treated like elements because the term "functional equivalents of an offense" is somehow distinct from "elements." *See Johnson*, 239 F.Supp.2d 924, 938–39 ("Under *Ring* and *Apprendi*, 'aggravating factors' are not 'elements' of a distinct 'capital' offense, but 'the functional equivalents of elements' in the specific sense that they increase the maximum penalty for the offense...."); *Regan*, 221 F.Supp.2d at 678 ("*Ring* held that Arizona's enumerated aggravating factors operate as 'the *functional equivalent of an element* of a greater offense,' but did not require that such factors become actual elements of a new substantive offense") (citations omitted) (emphasis in original); *Lentz*, 225 F.Supp.2d at 679 (same).

In assessing whether the FDPA's indictment or evidentiary requirements violate Defendant's Fifth and Sixth Amendment rights, however, these cases posit a distinction without a difference. *Jones, Apprendi, Ring*, and *Harris* establish a dualistic approach to analyzing factors enhancing punishment: either such factors are sentencing factors, in which case a judge can determine the existence of the factors using evidence that might not be permissible at trial and that need not be proven beyond a reasonable doubt, *see, e.g., Williams v. People of State of New York*, 337 U.S. 241, 246–47, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), or such factors must be treated as elements of the underlying offense. It is true that *Jones, Apprendi*, and *Ring* do not require the creation of aggravated murder or other new greater substantive offenses to try defendants on capital charges. *See Regan*, 221 F.Supp.2d at 679; *Lentz*, 225 F.Supp.2d at 680. It is equally true, however, that *Jones, Apprendi*, and *Ring* do require that facts giving rise to a punishment exceeding the maximum otherwise available, whether labeled as "elements" or "functional equivalents of elements," [9] must be treated as if they are elements-charged in an indictment, tried by a jury, and proven beyond a reasonable doubt-to pass constitutional muster. Therefore, the Court finds that the mens rea and aggravating factors enunciated in the FDPA, which if proven increase the maximum punishment of individuals charged with offenses listed at

---

9. "[A]ll facts essential to imposition of the level of punishment that the defendant receives-whether the statute calls them elements of the offense, sentencing factors, or Mary Jane-must be found by the jury beyond a reasonable doubt." *Ring*, 122 S.Ct. at 2444 (Scalia, J., concurring).

§ 3592 from life imprisonment to death, must be charged in an indictment and proven to a jury beyond a reasonable doubt. *Accord Fell,* 217 F.Supp.2d at 484 ("In line with the holdings of *Jones, Apprendi* and *Ring,* the essential facts of a capital offense must include the mental culpability and statutory aggravating factors specified in the FDPA.").

## B. Constitutionality of the FDPA When Construing the Mens Rea and Aggravating Factors as Essential Elements

### 1. *The FDPA and the Grand Jury Indictment*

Defendant argues that the FDPA is unconstitutional because 1) the FDPA has no provision for grand jury findings of mens rea or aggravating factors; and 2) the Superceding Indictment and Special Findings contained therein cannot overcome the FDPA's inadequate procedural protections because the grand jury is not authorized, either by statute or by the common law, to employ any such procedures.[10] In response, the United States avers that, even assuming *arguendo* that mens rea and aggravating factors must be charged in an indictment, the Superceding Indictment meets any such obligation and is also consistent with the plain language of the FDPA.

### a. *FDPA Factors Which Must be Charged in an Indictment*

Based on the preceding analysis, it is clear that mens rea and aggravating factors, which increase the maximum penalty for a crime, must be treated as if they are essential elements of the offense. As such, they "*must be charged in an indictment,* submitted to a jury, and proven beyond a reasonable doubt." *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215 (emphasis added). Although *Ring* did not expressly address whether these factors must be charged in an indictment because the issue was waived by the defendant in that case, "it appears to be a foregone conclusion that [mens rea and] aggravating factors that are essential to the imposition of the death penalty must appear in the indictment." *Regan,* 221 F.Supp.2d at 679; *accord Matthews,* 246 F.Supp.2d 137, 146–47 ("the statutory aggravating factors applicable to a capital offense[ ] must be alleged in the indictment") (citations omitted); *Fell,* 217 F.Supp.2d at 483 ("[T]he clear imposition of [*Ring* ], resting as squarely as it does on *Jones,* is that in a federal capital case the Fifth Amendment right to a grand jury indictment will apply."); *Lentz,* 225 F.Supp.2d at 680 (same); *United States v. O'Driscoll,* No. 4:CR–01–277, 2002 WL 32063818 at *2 (M.D.Pa. Aug.22, 2002) ("The *Ring* opinion along with prior and subsequent action by the Supreme Court suggests strongly that the intent and statutory aggravating factors justifying the imposition of a death sentence must be alleged in the indictment and we so conclude."). As a result, the government may only seek the death penalty if mens rea and aggravating factors are explicitly found by the grand jury in the returned indictment.

■ Defendant contends, moreover, that non-statutory aggravating factors,

---

**10.** Defendant also argues that because Congress intended the mens rea and aggravating factors to be sentencing factors, the FDPA is unconstitutional regardless of whether the FDPA may allow treatment of these factors as elements. Def.'s FDPA Mot. at 15. This argument may be easily dismissed, however, because Congressional labeling or intent regarding mens rea and aggravating factors is not dispositive. Rather, the proper inquiry is whether, once properly construed as elements, the FDPA allows for the mens rea and aggravating factors to be charged in an indictment, tried before a jury, and proven beyond a reasonable doubt. *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215.

mitigating factors, and a balancing of aggravating and mitigating factors (hereinafter "selection" factors) must all be found by the grand jury in the returned indictment. Contrary to Defendant's assertion, however, under *Jones, Apprendi, Ring,* and *Harris,* the grand jury need only allege probable cause for the existence of facts necessary to impose the maximum punishment. By definition, only mens rea and statutory aggravating factors can increase the maximum punishment under the FDPA. *See* § 3593(d). A determination of the existence of selection factors for a defendant already found to be death penalty eligible based on his/her mens rea and aggravating factors remains, under current case law, the dominion of the sentencing authority. *See Harris,* 122 S.Ct. at 2419; *Johnson,* 239 F.Supp.2d 924, 943–44 ("Nor is it necessary for the 'Findings' to include a finding that the aggravating factors specifically alleged outweigh any mitigating factors, as it is only the aggravating factors, if ultimately found by a jury beyond a reasonable doubt, that will make the offense eligible for the death penalty . . . exculpatory or mitigating factors have no such effect, nor indeed, does proof that aggravating factors outweigh mitigating factors, as the balancing of such factors only warrants the ultimate jury recommendation of a death sentence.") (emphasis omitted). As a result, these selection factors need not be charged in an indictment, tried before a jury, or proven beyond a reasonable doubt.

### b. *The Superceding Indictment Satisfies the Indictment Clause*

■ The Indictment Clause of the Fifth Amendment serves two critical functions. First, it acts as a check on prosecutorial power. *See United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1786–87, 152 L.Ed.2d 860 (2002); *Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (the grand jury's "re-sponsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions."); *Stirone v. United States,* 361 U.S. 212, 217–19, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) ("The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."); *United States v. Field,* 875 F.2d 130, 133 (7th Cir.1989). Second, it provides notice to the defendant of the charges against which he/she must defend. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Field,* 875 F.2d at 133 (stating that the Indictment Clause "entitles a defendant to be apprised of the charges against him, so that he knows what he must meet at trial.").

■ In the instant case, the Superceding Indictment meets both Constitutional objectives. The Superceding Indictment provided Defendant with clear notice of the mens rea and statutory aggravating factors which the government intends to prove during the sentencing hearing. *See Fell,* 217 F.Supp.2d at 484 ("The superseding indictment informs Fell that he is charged with a capital offense and specifies the factors that, if proven, will render him eligible for a death sentence."); Resp. to Def. at 11. Defendant argues that notice was insufficient because "[n]o person, without a specialized knowledge of federal capital sentencing procedures, could read the Superceding Indictment in this case and conclude that it was intended to charge Haynes with a capital crime." Def.'s Mot. to Strike I. The Supreme Court has made clear, however, that an indictment need only charge the elements necessary to constitute the offense, and need not charge

the ultimate punishment sought for the offense committed. *See Hamling,* 418 U.S. at 117, 94 S.Ct. 2887 ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'these words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'") (quoting *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1881)). Defendant admits that the special findings are drawn from language in 18 U.S.C. §§ 3591 and 3592, and does not claim that the Superceding Indictment fails to inform him of the specific mens rea and aggravating factors upon which the government will seek the death penalty. Therefore, Defendant has received the type of notice required under the Indictment Clause. *Accord Johnson,* 239 F.Supp.2d 924, 941–44 (rejecting a claim by the defendant that the findings in the superceding indictment fail to provide notice because they do not explicitly state that the defendant is charged with a capital crime); *Matthews,* 246 F.Supp.2d 137, 146–47 (same).

■ The Superceding Indictment also served as a check on prosecutorial power by requiring a grand jury to determine that probable cause exists to warrant the special findings supporting the imposition of the death penalty. *Accord Fell,* 217 F.Supp.2d at 484 ("When it returned a true bill, the grand jury performed its check on prosecutorial power by determining that probable cause exists to find that the specified mental culpability and aggravating factors exist."). Defendant argues that the grand jury could not fulfil this role because there is no indication that the grand jury knew that its special findings might make Defendant eligible for the death penalty. Def.'s FDPA Mot. at 16. Defendant, however, cites no authority in support of this assertion and the Court has found none. Indeed, as with Defendant's

notice contention, Defendant once again attempts to extend the meaning of the Indictment Clause beyond its Constitutional limits. The grand jury's role is not to decide whether probable cause supports the imposition of a particular *sentence* against a charged individual; rather, the grand jury check on prosecutorial power stems from its independent *factual* determination of the existence of probable cause for the essential elements of the charged offense. *See Branzburg,* 408 U.S. at 686–87, 92 S.Ct. 2646; *Stirone,* 361 U.S. at 217–19, 80 S.Ct. 270; *Matthews,* 246 F.Supp.2d 137, 146–47 ("Grand juries do not make findings or recommendations concerning punishment or sentencing and such considerations should not influence their decision. It is for the petit jury to make that determination.") (citations omitted); *Regan,* 221 F.Supp.2d at 680; *see generally* Fed.R.Crim.P. 7(a), (c) ("An offense which may be punished by death shall be prosecuted by indictment.... The indictment ... shall be a plain, concise and definite written statement *of the essential facts* constituting the offense charged.") (emphasis added).

■ Finally, the Court rejects Defendant's contention that a grand jury has no authority to make "special findings" concerning death-eligibility factors. As the government points out, the federal criminal code, outside of a few unrelated provisions, "contains virtually no rules governing grand jury practice." Resp. to FDPA Mot. at 20. The grand jury, born out of the Common Law, "is a constitutional fixture in its own right," *United States v. Williams,* 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), with "functional independence ... to initiate investigations, examine witnesses and to conduct its deliberations." *Id.* at 48, 112 S.Ct. 1735. "Given the grand jury's operational separateness[, the Supreme Court has been averse

to] prescribing modes of grand jury procedure." *Id.* at 49–50, 112 S.Ct. 1735. As a result, the Court will not prohibit the grand jury, absent express Congressional action, from returning superceding indictments in capital cases. *Accord Regan,* 221 F.Supp.2d at 680 ("the form chosen by the Government in presenting these facts in the superseding indictment-the 'Notice of Special Findings'-is permissible. Neither the Fifth Amendment nor Fed.R.Crim.P. 7 prohibits the presentation of such information in this manner."); *Lentz,* 225 F.Supp.2d at 681 (same); *cf. United States v. Kirtman,* 33 Fed.Appx. 401 (10th Cir.2002) (allowing the use of a superceding indictment to cure an *Apprendi*-based defect in the original indictment for a drug offense); *Keith v. United States,* 01 Civ. 3965(DLC), 99 CR. 157–11, 2001 WL 674155, 2001 U.S. Dist. LEXIS 7917 (S.D.N.Y. June 14, 2001) (same). Accordingly, the Superceding Indictment provides Defendant with the Constitutional safeguards embodied in the Indictment Clause.

c. *The Superceding Indictment is Consistent with the FDPA*

While the Superceding Indictment itself is Constitutionally sufficient, the Court must also address whether use of a superceding indictment is consistent with the FDPA's language. This issue is critical to the Court's inquiry because the government may not adopt Constitutional, ad hoc procedures inconsistent with the plain language of the statute in order to save the statute from being found unconstitutional. *Jackson,* 390 U.S. at 585, 88 S.Ct. 1209. As the government concedes, "the FDPA makes no provision for a grand jury to return [mens rea and aggravating factor] findings." Resp. to Def.'s FDPA Mot. at 15. Defendant also points out that the FDPA "requires that notice of aggravating factors listed under § 3592 be made in a pleading, filed by the government's

lawyer, and served upon the defendant, a reasonable time before trial." Def.'s Mot. to Strike I (citing 18 U.S.C. § 3593(a)). Defendant concludes that Congressional silence regarding any role for the grand jury, when coupled with the government's pleading requirement, constitute "convincing evidence that Congress did not intend prosecutors to seek the approval of a grand jury to allege aggravating factors." *Id.*

The Court finds that neither Congressional silence with respect to the grand jury's role in finding death-eligibility factors, nor § 3593(a)'s government pleading requirement, justify the conclusion drawn by Defendant. First, Congressional silence regarding treatment of the mens rea and aggravating factors in the indictment "does not make the statute inconsistent with the constitutional requirement that those factors receive [such] treatment." *Regan,* 221 F.Supp.2d at 680 (quoting *United States v. McAllister,* 272 F.3d 228, 233 (4th Cir.2001)); *see also Matthews,* 246 F.Supp.2d 137, 146–47 ("That the Death Penalty Statutes do not expressly state that the aggravating factors are elements of the offense to be charged by the Grand Jury does not mean that they run afoul of the constitution."); *Lentz,* 225 F.Supp.2d at 681; *Fell,* 217 F.Supp.2d at 484 ("That the FDPA is silent concerning the grand jury's role in charging death-eligible factors does not suggest that Congress intended to forbid grand jury participation or to exclude these factors from an indictment."); *United States v. Church,* 218 F.Supp.2d 813, 815 (W.D.Va.2002); *O'Driscoll,* 2002 WL 32063818 at *2.

Second, the Court finds that § 3593(a)'s requirement of a governmental filing of aggravating factors a reasonable time before trial does not require this Court to construe the FDPA as prohibiting the grand jury from returning an indictment

finding probable cause to believe the existence of the mens rea and aggravating factors charged. To the contrary, "[t]he fact that *Ring* requires decisions by the grand jury in addition to the Department of Justice before a defendant is subject to the possible imposition of the death penalty is consistent with the usual practice in criminal cases.... [and] provides a means by which the Department of Justice serves as a check against the possible abuse of power by a grand jury." *Sampson,* 245 F.Supp.2d 327, 336 (citing Fed.R.Crim.P. 7(c)(1)); *see also id.* at 336 ("Recognizing a role for the grand jury in deciding whether a defendant shall be subject to the death penalty does not require a rewriting of the Federal Death Penalty Act."). The grand jury's finding of mens rea and aggravating factors also does not render § 3593(a) redundant because the § 3593(a) notice may allege non-statutory aggravating factors and need not allege all of the statutory aggravating factors found by the grand jury. *Id.* at 336.

As a result, nothing within the text or history of the FDPA precludes the government from including mens rea and aggravating factors within the indictment. *Accord Sampson,* 245 F.Supp.2d 327, 336 ("there is nothing in the [FDPA] that expresses Congressional intent to prohibit the grand jury from performing its traditional function under the Fifth Amendment following *Ring.*"); *Matthews,* 246 F.Supp.2d 137, 146–47; *Lentz,* 225 F.Supp.2d at 680–81; *Fell,* 217 F.Supp.2d at 484; *Denis,* 246 F.Supp.2d 1250, 1254–55; *O'Driscoll,* 2002 WL 32063818 at *2 ("We are unable to discern anything in the [FDPA] that would prohibit the government from seeking a superseding indictment."); *Church,* 218 F.Supp.2d at 815 ("No statute or rule of procedure restricts the ability of the grand jury to make the findings that it did in this case.").

While it is true that the Congressional silence and § 3593(a) could be read to prohibit the grand jury from making mens rea and aggravating factors, courts should construe statutes so as to avoid Constitutional infirmity when the language of the statute allows for such a Constitutional interpretation. *See Salinas v. United States,* 522 U.S. 52, 59–60, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); *see also INS v. St. Cyr,* 533 U.S. 289, 299–300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Monsanto,* 491 U.S. 600, 611, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). Accordingly, this Court joins every other court that has faced this issue and finds that because nothing in the FDPA prevents the government from seeking the Superceding Indictment, and because the Superceding Indictment satisfies the Constitutional requirements of the Indictment Clause, the FDPA does not facially, or as applied in this case, violate Defendant's rights under the Indictment Clause of the Fifth Amendment. *See, e.g., Sampson,* 245 F.Supp.2d 327, 338 (listing cases).

### 2. *The FDPA's Relaxed Evidentiary Standard*

#### a. *The Parties' Fifth and Sixth Amendment Claims Based on United States v. Fell*

Defendant next argues that the fact that § 3593(c) admits evidence of mens rea and aggravating factors "regardless of its admissibility under the rules governing admission of evidence at criminal trials" violates his Due Process and Confrontation Clause rights under the Fifth and Sixth Amendments. Defendant contends that "[i]f the special findings are required to be pleaded by indictment, and proven beyond a reasonable doubt, then due process requires they be subject to the same manner of proof that every other essential element requires." Def.'s Mot. to Strike II (citing

*In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948)). In response, the government maintains that, prior to *Ring,* numerous courts upheld this relaxed evidentiary standard, and after *Ring,* six of seven courts have also upheld § 3593(c)'s evidentiary standard. Resp. to Mot. to Strike II at 1–2. The government also avers that this relaxed evidentiary standard is required by Supreme Court precedent mandating an individualized sentencing proceeding for capital defendants. *Id.* at 3 (citation omitted).

█ As an initial matter, the Court must determine whether the issue of § 3593(c)'s evidentiary standard during the penalty phase is ripe for review at this time. The Supreme Court has instructed that an issue is to be protected against "judicial interference until a[ ] ... decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds by California v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In *Quinones,* the Second Circuit expressly addressed this matter of ripeness and found that, under *Abbott Laboratories,* an issue involving the Constitutionality of the FDPA is ripe for pre-trial decision. *Quinones,* 313 F.3d at 59. The Court first found that "the defendants' argument clearly was fit for adjudication[ because a] challenge to the facial constitutionality of a criminal statute is a pure question of law." *Id.* at 59.

The Court also found that "a defendant suffers practical and legally-cognizable disadvantages by postponing a facial challenge to the death penalty until after trial." *Id.* These disadvantages include: 1) the granting of increased peremptory challenges to the prosecution in a death penalty case; 2) the exclusion of potential jurors who are conscientiously opposed to the death penalty; 3) and the use of less ad-

vantageous trial tactics such as plea agreements if the defendant is facing the death penalty. *Id.* at 59–60. Finally, the court noted that "the requirements of the FDPA necessarily affect the entire trial process, not merely the sentencing stage of the proceedings." *Id.* at 60. This Court is persuaded by the Second Circuit's logic in *Quinones* and, for the above-stated reasons, holds that the issue of the FDPA's penalty phase evidentiary standard is ripe for review at this time.

█ The parties do not dispute that § 3593(c) creates a more relaxed evidentiary standard for proving the existence of the mens rea and aggravating factors than is normally used to prove the existence of elements of an offense and than will be used to prove the elements of the §§ 2113, 924, and 922 charges brought against Defendant. Indeed, § 3593(c) expressly rejects use of the Federal Rules of Evidence for determining the admissibility of evidence during the penalty hearing. *See* § 3593(c) ("Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."). Defendant argues, in light of *Fell,* that this lax evidentiary standard violates his Due Process and Confrontation Clause rights.

In *Fell,* the district court held that the relaxed evidentiary standard, which admitted hearsay evidence that would otherwise be inadmissible under the Federal Rules of Evidence, does "not satisfy the demands of due process and the Sixth Amendment rights of confrontation and cross-examination." *Fell,* 217 F.Supp.2d at 485. The court found that the admission of hearsay evidence by a deceased codefendant implicating Fell, offered as evi-

dence of the existence of an aggravating factor during the sentencing phase, lacked sufficient guarantees of trustworthiness to satisfy due process or the confrontation and cross-examination prongs of the Sixth Amendment. *Id.* at 485–89. The Court also noted that this relaxed evidentiary standard was inconsistent with the Supreme Court's requirement for enhanced reliability in the fact-finding process in death penalty cases. *Id.* at 488 (citing *Woodson v. North Carolina*, 428 U.S. 280, 304–05, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)). Moreover, the court opined, every element of every crime set forth in the United States Code "must not only be proven to a jury beyond a reasonable doubt, but be proven by evidence found to be reliable by application of the Federal Rules of Evidence." *Id.* The court therefore determined "that the FDPA, which bases a finding of eligibility for imposition of the death penalty on information that is not subject to the Sixth Amendment's guarantees of confrontation and cross-examination, nor to rules of evidentiary admissibility guaranteed by the Due Process Clause to fact-finding involving offense elements, is unconstitutional." *Id.* at 489. In addition, the court found that the evidentiary portion of the FDPA was not severable; that the doctrine of Constitutional avoidance did not apply because Congress had unequivocally excluded application of the Federal Rules of Evidence; and that the court could not fashion an alternative evidentiary standard to make the statute Constitutional because statutes "cannot be saved by judicial reconstruction." *Id.* at 489 (quoting *Jackson*, 390 U.S. at 585, 88 S.Ct. 1209).

Other courts have rejected the conclusion reached in *Fell*, holding that the relaxed evidentiary standard in the FDPA does not render the FDPA unconstitutional. *See Johnson*, 239 F.Supp.2d 924, 945–46; *Matthews*, 246 F.Supp.2d 137, 141–46; *Regan*, 221 F.Supp.2d at 681–83; *Lentz*,

225 F.Supp.2d at 682–84. These decisions are premised on two factors: 1) compliance with the Federal Rules of Evidence is not required to satisfy the Fifth or Sixth Amendments, *Matthews*, 246 F.Supp.2d 137, 141–43; *Regan*, 221 F.Supp.2d at 681; *Lentz*, 225 F.Supp.2d at 682; and 2) the FDPA's evidentiary standard is broad enough, and gives trial courts sufficient flexibility, to ensure that unconstitutional evidence of the mens rea and aggravating factors is not admitted. *Johnson*, 239 F.Supp.2d 924, 946; *Matthews*, 246 F.Supp.2d 137, 144–45; *Regan*, 221 F.Supp.2d at 682–83; *Lentz*, 225 F.Supp.2d at 683–84. The Court finds that the logic of the *Johnson, Matthews, Regan*, and *Lentz* decisions is supportable and therefore joins these courts in respectfully declining to adopt the well-reasoned *Fell* decision. The decisions in *Johnson, Matthews, Regan*, and *Lentz* provide a plausible rationale which permits the Court to uphold the Constitutionality of the FDPA.

  b.  Adherence to the Federal Rules of Evidence is not Required for Compliance with the Due Process and Confrontation Clauses

The guilt phase of a trial unquestionably requires that evidence meet a more heightened standard of reliability to be admissible than evidence admitted during the sentencing phase. *See Williams v. New York*, 337 U.S. at 246, 69 S.Ct. 1079 (evidence of guilt has always "been hedged in by strict evidentiary procedural limitations[ whereas a] sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law."). In light of *Jones, Apprendi, Ring*, and *Harris*, the Court finds that the mens rea and aggravating factors required to qualify a defendant for the death penalty must be

proven by evidence that would pass Constitutional muster during the guilt phase.

This finding, however, does not require application of the Federal Rules of Evidence for proving the mens rea and aggravating factors. Congress is free to impose any Constitutional evidentiary scheme it chooses to prove elements of a particular offense because "subject to the requirements of due process, 'Congress has power to prescribe what evidence is to be received in the courts of the United States.'" *United States v. Brainer*, 691 F.2d 691, 695 n. 7 (4th Cir.1982) (quoting *Tot v. United States*, 319 U.S. 463, 477, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943)). As a result, Congress need not require the application of the Federal Rules of Evidence for proving mens rea and aggravating factors, *see Matthews*, 246 F.Supp.2d 137, 141–42 ("the Federal Rules of Evidence are not constitutionally mandated *per se.*") (citations omitted) (emphasis in original); *Regan*, 221 F.Supp.2d at 681 ("the Federal Rules of Evidence are not constitutionally mandated."); *Lentz*, 225 F.Supp.2d at 682 (same), so long as the evidentiary scheme adopted comports with the Fifth and Sixth Amendments. *See generally Dickerson v. United States*, 530 U.S. 428, 437, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) ("Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution."); *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ("[L]awmakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."). Indeed, courts have routinely rejected claims of constitutional error when courts have improperly applied the Rules of Evidence because the Federal Rules of Evidence offer broader protection than that which is required by the Constitution. *See, e.g., Dowling v. United States*, 493 U.S. 342, 352–54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (finding that the trial court's failure to comply with Fed.R.Evid. 404(b) did not violate due process because the admission of such evidence did not "violate[ ] those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'") (citations omitted); *Matthews*, 246 F.Supp.2d 137, 143–44. Therefore, to be Constitutional, the evidentiary scheme for proving mens rea and aggravating factors need not adopt the Federal Rules of Evidence.

  c.  The FDPA's Evidentiary Standard Does Not Require the Court to Abridge Defendant's Due Process and Confrontation Clause Rights

The text of § 3593(c) plainly sets forth the evidentiary standard applicable for proving the existence of mental culpability and aggravating factors during the sentencing hearing:

> At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

This evidentiary standard might result in the admission of information inadmissible under the Federal Rules of Evidence and information detrimental to Defendant. Nothing in the text of the FDPA, however, "eliminate[s] the constitutional baseline for the admissibility of evidence in a criminal trial." *Matthews*, 246 F.Supp.2d 137, 144–

45. To the contrary, because the FDPA "expressly supplants only the *rules of evidence,* not constitutional standards.... [the trial court] retains the authority under the statute to impose upon the parties any standards of admissibility or *fairness* dictated by the Fifth and Sixth Amendments." *Johnson,* 239 F.Supp.2d 924, 946 (emphasis in original). Moreover, the discretionary prong of § 3593(c), allowing the court to exclude any information "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury," ensures that the trial court will have sufficient flexibility to exclude any information implicating Defendant's Fifth or Sixth Amendment rights. *Accord Matthews,* 246 F.Supp.2d 137, 144–45 (the FDPA "provides the trial court with the discretion necessary to exclude unreliable and/or prejudicial evidence the admission of which would be fundamentally unfair and, therefore, violate the defendant's right to a fair trial under the Bill of Rights."). Therefore, § 3593(c) clearly can be read in a manner consistent with the Constitution. As a result, even if the language of the FDPA might allow for an unconstitutional application of § 3593(c), the doctrine of Constitutional avoidance requires this Court to adopt the Constitutional construction of § 3593(c). *See Salinas,* 522 U.S. at 59–60, 118 S.Ct. 469; *St. Cyr,* 533 U.S. at 299–300, 121 S.Ct. 2271; *Monsanto,* 491 U.S. at 611, 109 S.Ct. 2657. Accordingly, the Court holds that the FDPA's relaxed evidentiary standard articulated in § 3593(c) does not violate the Due Process or Confrontation Clauses.

## III. *CONCLUSION*

For the above-stated reasons, Defendant's motions to declare the Federal Death Penalty Act unconstitutional and to strike the Superceding Indictment, Special Findings, and Notice of Intent to Seek the Death Penalty are DENIED.